# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| United States of America | ) |
| | ) |
| v. | ) Case No. 17-7551(MJ) |
| Rafael Benjamin Cabanas Jr., | ) |
| USC | ) |
| *Defendant* | ) |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

### Count 1:

On or about November 4, 2017, at or near Casa Grande, in the County of Pinal, in the District of Arizona, Rafael Benjamin Cabanas Jr., knowingly and with reckless disregard of the fact that certain aliens, Sergio Ramirez-Vasquez and Luis Fernando Castillo-Perez had come to, entered, and remained in the United States in violation of law, did transport and move said aliens within the United States by means of transportation and otherwise, in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

REVIEWED BY: AUSA Brandon M. Brown for AUSA Jonathan Hornok

_____
Signature of Complainant
Albert A. Martinez
U.S. Border Patrol Agent

Sworn to before me and subscribed in my presence, this 6th day of November, 2017.

_____
Signature of Judicial Officer
Honorable Bridget S. Bade
United States Magistrate Judge

## STATEMENT OF PROBABLE CAUSE

I, Albert A. Martinez, being duly sworn, hereby depose and state as follows:

1. Your affiant is a Border Patrol agent with U.S. Border Patrol, U.S. Customs and Border Protection. I have learned about this investigation and the facts contained therein from direct participation in the investigation and from the reports and communications of other agents.

2. On November 4, 2017, at approximately 11:00 p.m., Border Patrol agents A. Illas and J. Wilkes, responded to a call for assistance from the Pinal County Sheriff's Office (PCSO), along the westbound lane of Interstate 10, mile marker 203. Once on scene, Agents Illas and Wilkes met with PCSO Deputy K. Nardelli (Badge # 1961). Deputy Nardelli informed Agents Illas and Wilkes that he had performed a vehicle stop due to the vehicle's driver following too close to another moving vehicle (violation section 28-730.A), and driving a vehicle with expired registration tags (violation section 28-2532.A). Upon inspection of the vehicle and its occupants, Deputy Nardelli placed a call requesting assistance from Border Patrol agents. Deputy Nardelli needed assistance in identifying and interviewing some of the vehicle's occupants whom he suspected may be illegally present in the United States.

3. Agents Illas and Wilkes interviewed the occupants and determined that three of the passengers were illegally present in the United States. The three individuals, two of which were later identified as Sergio Ramirez-Vasquez and Luis Fernando Castillo-Perez, admitted to illegally entering the United States and not possessing any

documentation allowing them to enter, reside or pass through the United States. The third individual was identified as a citizen of Guatemala, currently under 18 years of age, also admitted to recently illegally entering into the United States. The individual also did not claim to possess any documentation allowing him to enter, reside or pass through the United States.

4. The driver of the vehicle, later identified as Rafael Benjamin Cabanas Jr., was identified as being a citizen of the U.S. by agents Illas and Wilkes. Cabanas Jr. was placed under arrest for the attempted smuggling and transportation of illegal aliens. Cabanas Jr. and the three illegal aliens were transported to the Casa Grande Border Patrol Station for further processing. A front seat passenger that was accompanying Cabanas Jr. was also determined to be a United States Citizen. The individual had an outstanding arrest warrant and was taken into custody by Deputy Nardelli at the scene.

5. At the Casa Grande Border Patrol Station, all occupants of the vehicle were entered into the Customs and Border Protection e3 database and setup for processing. During the initial processing, biographical information was gathered. At approximately 11:41 p.m., Cabanas Jr. was read his Warning as to Rights (Service Form I-214) by Agent Illas as witnessed by Agent Wilkes. Cabanas Jr. stated that he understood his rights and did not agree to answer any questions at that time without the presence of an attorney. Cabanas Jr. was placed in a holding cell and no further questioning of Cabanas Jr. took place.

6. The following is a written synopsis of an interview of Luis Fernando Castillo-Perez

3

conducted by Agent E. Castorena and witnessed by Agent J. Mariona of the videotaped sworn statement taken before him at the Casa Grande Border Patrol Station at approximately 1:07 a.m.

7. Castillo-Perez stated he and his cousin had traveled to Altar, Sonora, Mexico with the intention of hiring someone to smuggle them into the United States. Once in Altar, Castillo-Perez stated they met a smuggler by the moniker, "Pantera." Castillo-Perez stated Pantera took them to a house where they waited for five days before departing to cross into the United States. While at the house in Altar, Castillo-Perez stated he paid Pantera $1,000 USD out of total $5,000. The remaining balance was to be paid after arriving in Phoenix, Arizona. Castillo-Perez further stated his final destination was somewhere in Florida.

8. Castillo-Perez stated after waiting in Altar for five days, Pantera led his group, consisting of five other individuals, to a location near the U.S. and Mexico border. From there, Castillo-Perez stated he remembered jumping a tall fence and then walking for six days until they arrived at location where they were to be picked up. Once there, Castillo-Perez stated Pantera placed a phone call and arranged for someone to pick them up. Castillo-Perez stated that once the car arrived to pick them up, Pantera spoke with the driver before they all got in and the driver knew where to take them.

9. Castillo-Perez stated the car that picked them up was gray in color, but did not remember any further details about the car. Once in the car, Castillo-Perez stated that

4

no one in his group spoke English, and the driver didn't speak any Spanish. Castillo-Perez stated after they were picked up they were driven to Tucson, Arizona, and from there they were to be driven to Phoenix. Castillo-Perez stated they were in the car for what seemed like most of the day, and at one point the driver stopped and picked up a male passenger at a gas station.

10. Castillo-Perez was asked if he was going to pay the driver any money for his trip to Phoenix. Castillo-Perez stated he was going to pay the driver $300 USD after arriving at their destination in Phoenix. Lastly, Castillo-Perez stated the foot guide, Pantera, never got into the car with them after meeting in the desert. Castillo-Perez stated they were in the vehicle for approximately 30 to 40 minutes after stopping in Tucson before they were stopped by a police officer.

11. Castillo-Perez was shown a photo lineup and asked if he recognized anyone from the photographs, and if so, if he knew who they were. Castillo-Perez circled a male subject in photograph number five and wrote, "chofer" (driver). Photograph number five is a picture of Rafael Benjamin Cabanas Jr.

12. The following is a written synopsis of an interview of Sergio Ramirez-Vasquez conducted by Agent J. Mariona and witnessed by Agent E. Castorena of the videotaped sworn statement taken before him at the Casa Grande Border Patrol Station at approximately 1:25 a.m.

13. Ramirez-Vasquez stated he is a citizen of Mexico who illegally entered into the United States. Ramirez-Vasquez stated he and his cousin arrived in Altar, Sonora,

Mexico a few days ago and began searching for a smuggler who would help him and his cousin cross into the United States. Ramirez-Vasquez stated he met a human smuggler by the name of "Alberto" (a.k.a. El Burro, El Cholo), who agreed to help him and his cousin. Ramirez-Vasquez stated they agreed to pay a total of $1,000 USD up front and were to wire an additional $3,500 USD to an account once they successfully arrived in Phoenix, Arizona.

14. Ramirez-Vasquez stated he and three other individuals were later taken to an area just south of the border. After arriving at the border, Ramirez-Vasquez and his group were instructed by a foot guide to cross the fence and follow him north through the desert. Ramirez-Vasquez stated the journey was long and difficult, but the foot guide encouraged him to continue on when he was ready to quit.

15. After six days of walking, Ramirez-Vasquez stated he and his group arrived at a designated pick up location. Ramirez-Vasquez stated the foot guide had placed a call to someone and a short time later a small two door car arrived at their location to pick them up. Ramirez-Vasquez stated they were not accompanied by the foot guide in the car and believed he walked back to Mexico. Ramirez-Vasquez stated the car drove them for approximately half an hour until it arrived at a small yellow house. Ramirez-Vasquez stated he believed the house belonged to the driver of the small red car. Ramirez-Vasquez claimed he did not know the name of the driver who picked them up, but they were allowed to rest at the house and eat while they waited.

16. Ramirez-Vasquez stated that sometime on November 4, 2017, a white four door

vehicle arrived at the yellow house where he and his group were waiting. Ramirez-Vasquez stated he, his cousin and another individual from his group were instructed to enter into the back seat of the car. Ramirez-Vasquez noted when he got into the car there was a driver and front seat passenger already waiting in the car. Ramirez-Vasquez did not know the driver or front seat passenger, nor did he receive their names, but he had a short conversation with the front seat passenger about his trip through the desert. Shortly after leaving the house, the driver stopped and purchased some burritos so he and the others could having something to eat during their trip to Phoenix.

17. Ramirez-Vasquez was asked if he believed that the driver knew he was illegally present in the United States to which he replied, "yes." Ramirez-Vasquez claimed he was not going to pay the driver personally, but believed he was going to be paid by someone else. Ramirez-Vasquez further stated he knew the driver, "was not just doing him a favor." Ramirez-Vasquez stated the vehicle traveled for approximately 30 minutes before being pulled over by a police officer.

18. Ramirez-Vasquez was shown a photo lineup consisting of five random males who had similar appearances to the driver, Rafael Benjamin Cabanas Jr. Ramirez-Vasquez was asked if he recognized anyone from the photographs and if so, if he knew who they were. Ramirez-Vasquez circled a male subject in photograph number five and wrote, "se parace el chofer" (looks like the driver). Photograph number five is a picture of Rafael Benjamin Cabanas Jr.

7

19. Based on the above stated facts, your affiant submits that there is probable cause to believe that on or about November 4, 2017, at or near Casa Grande, in the County of Pinal, in the District of Arizona, Rafael Benjamin Cabanas Jr., knowingly and with reckless disregard of the fact that certain aliens, Sergio Ramirez-Vasquez and Luis Fernando Castillo-Perez, had come to, entered and remained in the United States in violation of law, did transport and move said aliens within the United States by means of transportation and otherwise in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

_____
Signature of Complainant
Albert A. Martinez
U.S. Border Patrol Agent

Sworn to and subscribed before me this 6th day of November, 2017.

_____
Signature of Judicial Officer
Honorable Bridget S. Bade
United States Magistrate Judge